## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Alaa Saade,

                     Plaintiff,         Case No. 19-cv-11440

v.                                    Judith E. Levy
                                    United States District Judge

The City of Detroit, Detroit Fire
Department, Assistant             Mag. Judge Mona K. Majzoub
Superintendent Sean Larkins, and
Captain Timothy Goodman, in
their official and individual
capacity,

                     Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [31] AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [32]

Before the Court are Plaintiff and Defendants' cross-motions for summary judgment (ECF Nos. 31, 32.) Plaintiff Alaa Saade is a Lieutenant for the EMS Division of the Detroit Fire Department, working as a paramedic. (ECF No. 31, PageID.215; ECF No. 32, PageID.1540.) He sued the City of Detroit and two of its employees, Sean Larkins and Earl Timothy Goodman, for employment discrimination based upon his

national origin.[1] Defendant Larkins is a Superintendent of EMS. (ECF No. 32, PageID.1540.) Defendant Goodman was a Captain within EMS and was Plaintiff's shift captain from approximately January 2017 through April or May 2017. (ECF No. 31, PageID.216; ECF No. 32, PageID.1541.)

Plaintiff alleges Defendants discriminated against him based on his national origin, which is Middle Eastern Palestinian, and his religion, which is Muslim. (ECF No. 1, PageID.11) He sues all Defendants in a one-count complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000. Plaintiff's complaint describes four incidents of alleged discrimination:

1. Failure to promote in 2016;

2. Unlawful discipline on February 26, 2017 and denial of his right to appeal;

3. Unlawful discipline on March 27, 2017 and denial of his right to appeal; and

4. Failure to accommodate a request for shift changes during Ramadan in spring of 2017.

---

[1] Plaintiff's complaint originally included the Detroit Fire Department as a Defendant. (ECF No. 1.) The parties stipulated to dismissal of the Detroit Fire Department. (ECF No. 12.)

(*See* ECF No. 1, PageID.11–12.)

For the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' motion for summary judgment.

## I.   Background

Plaintiff is a practicing Muslim man, who is of Middle Eastern and Palestinian descent. (ECF No. 1, PageID.4.) Plaintiff began working for Defendant City of Detroit as an Emergency Medical Technician (EMT) in April 2014. (ECF No. 32, PageID.1540.) He attended and completed the Emergency Medical Services (EMS) training academy program and was promoted to the position of a paramedic with the City's EMS department in February 2016. (*Id.*)

When Plaintiff was hired, he notified Defendants of his status as a devout and practicing Muslim and was granted an accommodation to have a beard despite the Defendants' "no beard" requirement.[2] (ECF No. 31, PageID.215.) He also made his national origin as Palestinian known, since he openly discussed it, was asked questions by his co-workers about

---

[2] The Court understands that this policy is related to the ability to properly seal a mask around one's nose and mouth, which a beard may interfere with.

being Palestinian, and he often brought in traditional Palestinian food to share. (*Id*. at PageID.216.)

The background regarding the four incidents underlying Plaintiff's Title VII claims are set forth below.

### *Failure to Promote*

In 2016, Plaintiff applied for job that would have led to a promotion to the rank of Shift Supervisor Grade II. (ECF No. 31, PageID.224.) He states that he was selected from many other candidates to take a written test and participate in an oral interview. Plaintiff states that he was the only candidate with a college degree, which was listed as one of the preferred job requirements. He also alleges that he was the only candidate who was Muslim and of Palestinian national origin. (*Id*.) (ECF No. 1, PageID.8–9.) Plaintiff was not offered the position.

### *February 17, 2017 Discipline*

On February 17, 2017, Plaintiff was disciplined for missing a day of work. Plaintiff states that he missed work because his daughter was sick. (ECF No. 31, PageID.216–17.) The absence resulted in Plaintiff receiving a charge for "Failure to Notify of an Anticipated Absence." (ECF No. 32, PageID.1543.)

4

Following the initial charge hearing, Plaintiff was found guilty of the charge and issued a written reprimand as a result. (*Id.*)

### March 27, 2017 Discipline

On March 27, 2017, Plaintiff received a charge of discipline for delaying a run. During that time period, the City of Detroit's EMS response times were an ongoing issue within the department. (ECF No. 32, PageID.1544.) When response times exceeded eight minutes, the run would be flagged and reviewed for compliance with EMS's policy to have an ambulance in motion within one minute of a call. (*Id.*)

At 6:42 am that morning while Plaintiff was on duty, a run came in for an attempted suicide. Before the paramedics were notified of the run, another employee, Jeff Gaglio, arrived early for work on his shift and relieved Plaintiff's partner Nataki Vickers. As Gaglio and Plaintiff (who was driving the ambulance) began pulling out into the driveway for the run, Plaintiff saw his shift relief, Chris Photiades, arrive at work. Plaintiff turned the ambulance around to switch with Phiotades. Phiotades and Gaglio then took the run, and arrived on the scene at 6:51 am—nine minutes after the run came in. (*Id.* at 1544–45.)

5

When the run was flagged for delay, Defendant Goodman assigned Plaintiff's supervisor, Lieutenant Darin Ross, to investigate. Ross concluded that Plaintiff was responsible for the delayed run after turning around the ambulance in order to go home. Of the four individuals involved in the run that morning, only two were interviewed, and only Plaintiff was disciplined. (ECF No. 31, PageID.219.) The recommended penalty was a six-hour suspension, which Plaintiff did not serve. (ECF No. 32-8, PageID.1695.) Plaintiff did not serve the six-hour suspension. (ECF No. 32, PageID.1555.)

### April 2017 Ramadan Accommodation Request

Plaintiff alleges that he was denied a religious accommodation in April 2017. Plaintiff requested an accommodation to allow him to work night shifts during the month of Ramadan, which began in May 2017.[3] (ECF No. 1, PageID.9.) His request came at the time that Defendants were in their quarterly bidding process for shift and duty station assignments, and, according to policy, assignments are granted on a first-

---

[3] During Ramadan, Plaintiff would be unable to eat or drink from sunup to sundown, and—given the nature of the duties of a paramedic—he sought an accommodation to work a night shift so he would not be fasting during his shift. (ECF No. 31, PageID.223.)

come, first-served basis based on seniority. (*Id.*) (ECF No. 1, PageID.9.) Plaintiff's request was denied. Plaintiff states that he attempted to find a co-worker who was willing to trade shifts with him but was unable to. (ECF No. 31, PageID.223.) Plaintiff's request was later accommodated. (*See* ECF No. 32-3, PageID.1596–97.)

### *Plaintiff's Injuries*

Plaintiff argues that he has suffered stress, anxiety, and emotional distress because of Defendants' conduct in the five incidents described above. He argues that he was penalized for taking time off work due to stress after these incidents, and then, when he returned, he was placed on probation.[4] He states that he spent almost eight months off work seeking treatment. Plaintiff also alleges that he suffered a loss in wages, seniority, overtime pay, and benefits due to the incidents alleged in his complaint.

### *Equal Employment Opportunity Commission*

---

[4] For the reasons set forth below, this claim will not be addressed because Plaintiff did not exhaust it.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). The EEOC describes the charge as follows:

> The [Plaintiff] alleges he was disciplined on February 26, 2017 and March 27, 2017, denied promotion to the position of Assistant Emergency Medical Service Supervisor-Grade II in March 2017 due to his national origin, Palestinian, and religion, Muslim, and that he was denied a religious accommodation of a shift assignment change on April 10, 2017 due to his religion in violation of Title VII.

(ECF No. 1-2, PageID.17.) After investigating the allegations, the EEOC concluded the following:

> The Commission's investigation did establish that [Plaintiff] was discriminated against on March 27, 2017, when he was disciplined due to his national origin and religion in violation of Title VII. There was insufficient evidence to support a violation of Title VII with respect to the remaining allegations and the [Plaintiff] will receive a Dismissal and Notice of Rights regarding these allegations.

(ECF 34-3, PageID.2285.)

In sum, the EEOC found that Plaintiff was discriminated against due to his national origin and religion for one of the four charges brought: the March 27, 2017 discipline. Plaintiff received a right to sue letter for

the remaining three charges: failure to promote, the February 27, 2017 discipline, and April 2017 religious accommodation denial.

## II.   Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

## III.   Analysis

### A. EEOC Exhaustion

As an initial matter, Defendants argue that the Court does not have subject matter jurisdiction to hear any of Plaintiff's claims beyond those explicitly raised with the EEOC. Defendants are correct. "It is well settled that federal courts do not have subject matter jurisdiction to hear

Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Strouss v. Mich. Dept. of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001).

Plaintiff's EEOC charge of discrimination is set forth above. His complaint cites to four incidents of alleged discrimination: (1) failure to promote Plaintiff in 2016; (2) discipline on February 26, 2017 and denial of appellate rights; (3) a second discipline incident on March 27, 2017 and denial of appellate rights; (4) failing to provide a reasonable religious accommodation that would enable him to work a night shift during the month of Ramadan.  (ECF No. 1, PageID.11–12.)

These four incidents match the claims that Plaintiff brought before the EEOC, except for the allegations that Plaintiff was denied his appellate rights for the February and March 2017 incidents. Accordingly, those will not be considered. Further, it appears from Defendants motion that through the course of discovery, the scope of Plaintiff's claims may have expanded to include additional incidents. The Court will only consider the claims that were brought before the EEOC.[5]

_____

[5] In Plaintiff's reply brief, he appears—for the first time—to set forth hostile work environment claims. However, these will not be considered because they were not presented to the EEOC, and, additionally, the Court need not address arguments

10

## B.  Title VII Generally

Under Title VII, an employer is prohibited from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The plaintiff has the burden of proving the defendant's discrimination in a Title VII case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Also, in this particular case the parties do not dispute that there is no direct evidence of discrimination.

When setting forth a prima facie case based upon circumstantial evidence, a plaintiff must show that: (1) they are a member of a protected class;[6] (2) they were subject to an adverse employment action; (3) they were otherwise qualified; and (4) they were treated less favorably than a

---

raised for the first time in a reply brief. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("[W]e have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses.")

[6] The parties do not dispute that Plaintiff is a member of a protected class based on his Muslim religion and Palestinian national origin.

11

similarly situated employees outside of the protected class. *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 626 (6th Cir. 2000).[7]

First, the Court will address the Title VII claims brought against the individual Defendants. Second, the Court will analyze Plaintiff's discrimination claims against the City of Detroit.

## C. Individual Claims Against Defendants Larkins and Goodman

Plaintiff sues both Defendants Larkins and Goodman in their individual and official capacities. As to the suit against them in their individual capacities, the Sixth Circuit has long held that Title VII does not contemplate liability against other individual employees even if that employee is a supervisor. "[A]n individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII." *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Rather, only an "employer" may be sued under Title VII. 42 U.S.C.

---

[7] Once the plaintiff has established a prima facie case, then *McDonnel Douglas* burden shifting occurs, and the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Hall*, 215 F.3d at 626. If the defendant does so, the burden shifts back to the plaintiff to prove that the reason advanced is pretextual. *Id.* However, as set forth below, Plaintiff does not establish a prima facie case for any of the incidents cited, and accordingly, the Court need not address burden shifting.

§ 2000e(b). Plaintiff has not made any arguments that either of these individuals are or were "employers" under Title VII. The facts indicate both are individual employees and supervisors employed by the City of Detroit. Accordingly, neither Larkins nor Goodwin can be sued under Title VII in their individual capacities and those claims are dismissed.

Plaintiff also sues Larkins and Goodwin in their official capacities. As to Defendant Larkins, Plaintiff's claims are dismissed because he does not set forth any specific allegations of discrimination. Plaintiff was asked in his deposition, "What action did Chief Larkins take against you that you would believe [was] discriminatory based on your religion or your ethnicity?" Plaintiff answered, "None. He did not take any." (ECF No. 32-3, PageID.1612.) A discriminatory act is an essential element of a discrimination claim under Title VII. Without it, Plaintiff's claims against Larkins fail and he is dismissed.

As to Defendant Goodwin, Plaintiff explains that Goodwin used Facebook to post dozens, if not hundreds, of items containing offensive, Islamophobic, racist, xenophobic, and humiliating images and comments. (ECF No. 31, PageID.220.) Plaintiff states that his co-workers alerted him to the postings in the spring of 2017, and that Plaintiff's co-workers

13

were concerned that Defendant Goodman had put Plaintiff on a "mental hit list of minority EMS workers that [Goodman] was seeking to have terminated."[8] (*Id.*)

The Facebook posts are clearly offensive and Plaintiff may have justifiably felt unsafe being around Defendant Goodman as a result. However, the allegations related to Goodman do not meet the elements of a Title VII discrimination claim. Plaintiff does not set forth any evidence that Goodman was involved in the 2016 promotion decision. Nor did Goodman lead the investigations into the February 17, 2017 or March 27, 2017 disciplinary incidents and appeals.[9] Nor does Plaintiff set forth evidence that Goodwin was involved in his Ramadan scheduling

---

[8] After the City of Detroit became aware of the offensive Facebook posts, Defendant Goodman was investigated, charged, and terminated. (ECF No. 32, PageID.1542.) Defendant Goodman's union grieved his termination, and, after an arbitration, the arbitrator rendered an award reinstating him. (*Id.*)

[9] Plaintiff does argue that the "entire blame of the delayed run [on March 27, 2017] was placed squarely on the shoulders of Mr. Saade by Defendant Goodman." (ECF No. 34, PageID.2034.) But this argument is conclusory and not supported by the record. The investigation regarding the delay was handled by another supervisor, Darin Ross. (*Id.*) Ross testified that the investigation was his own; not Goodman's. (ECF No. 32-12, PageID.1912.) While Plaintiff argues that Goodman may have desired a particular outcome of the investigation, neither Ross's testimony in his deposition, nor the legal arguments set forth by Plaintiff support these allegations justify sustaining a claim against Goodman on summary judgment.

14

accommodation. Accordingly, Plaintiff has not met his burden of establishing a prima facie Title VII case against Defendant Goodwin, and Goodwin is dismissed.

### D. Claims Against Defendant City of Detroit

#### 1. Failure to Promote in 2016

Plaintiff's first claim against the City of Detroit is that he was discriminated against when he was not hired for a position that would have led to a promotion to the rank of Shift Supervisor Grade II. (ECF No. 31, PageID.224.) For the purposes of Title VII, failure to promote is an adverse employment action. *See Hale v. Cuyahoga County Welfare Dep't*, 891 F.2d 604, 606 (6th Cir. 1989). Accordingly, Plaintiff must demonstrate he was otherwise qualified but treated less favorably than similarly situated employees. *Hall*, 215 F.3d at 626. Plaintiff does not meet his burden on this claim.

Defendants assert that Plaintiff did not meet all of the requirements for the position. (ECF No. 35, PageID.3128.) They also argue that Plaintiff "clearly lied on his application by indicating had been a paramedic with the Department for three (3) […], when he had only been a paramedic for a couple months." (*Id.*) They also argue that the

college degree was a preferred qualification, not a required qualification, and that Plaintiff has no evidence that the other applicants did not have this qualification. (*Id.*)

Plaintiff argues that he was qualified but was treated less favorably than similarly situated employees who are not members of the protected class—yet he does so only in conclusory terms and cites no evidence in support of his position. (*See* ECF No. 31, PageID.224, PageID.236.) He argues, without evidence, that he was the only candidate with a college degree. (*Id.*) Plaintiff admitted in his deposition that he was unsuccessful at the oral interview portion of the selection process. (*Id.*)  Specifically, when asked if it was possible another candidate got the position because they outscored Plaintiff in other categories of the application, Plaintiff admitted, "I have no idea. Anything is possible." (ECF No. 32-3, PageID.1599.) Plaintiff was asked what evidence he had to support his claim of discrimination and he stated, "I don't have any evidence of that. Just what I feel happened because of the way it happened, so." (*Id.*) This is not enough to sustain a claim of discrimination. Moreover, Plaintiff admitted that he provided

false or incorrect information on his application regarding the length of time he had worked as an EMT. (*Id*. at PageID.1598.)

Rather than support his conclusory arguments with evidence, Plaintiff instead points to Defendants, arguing that they have not set forth legitimate reasons for passing over him for the position. (ECF No. 31, PageID.236.) But the burden does not shift to Defendants to provide legitimate reasons for their actions until Plaintiff has set forth a prima facie case under Title VII, which he has not.

In sum, Plaintiff has not established a prima facie case for failure to promote. Accordingly, Plaintiff's motion for summary judgment is denied, and the City's motion for summary judgment is granted on this claim.

### 2.   February 27, 2017 Discipline

Plaintiff argues that the disciplinary action taken against him on February 27, 2020 was unlawful. Plaintiff argues that he called into work to report his absence by the time his shift began at 7:00 a.m. (*Id*.) Defendants argues he did not call in to report his absence, and that Defendants had to investigate the morning-of to discover why Plaintiff missed work. (ECF No. 32, PageID.1543.) Plaintiff received a letter of

reprimand as a result of the investigation and charge. (ECF No. 32, PageID.1543.)

When establishing a prima facie case of discrimination, Plaintiff must demonstrate "a materially adverse change in the terms of [his] employment." *Chattman v. Toho Tenax* America, Inc., 686 F.3d 339, 348 (6th Cir. 2012) (citations omitted). Adverse employment actions are generally "tangible employment actions." *See Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). However, the Sixth Circuit has held that a "letter of reprimand is not a materially adverse employment action unless it is accompanied by a loss such as a demotion or salary reduction. . ." *Agrawal v. Montemango*, 574 F. App'x 570, 576–77 (6th Cir. 2014) (citing *Taylor v. Geithner*, 703 F.3d 328, 338 (6th Cir. 2013)). Plaintiff has not demonstrated that there was any such accompanying demotion or salary reduction.

Accordingly, Plaintiff's claim that the February 2017 discipline was a violation of Title VII fails, and summary judgment is granted in favor of the City.

### 3.    March 27, 2017 Discipline

Plaintiff's next claim regards his March 27, 2017 discipline for delaying a run. For this incident, Plaintiff was found guilty of Neglect of Duty and was issued a six-hour suspension and disciplinary letter. (ECF No. 32, PageID.1545.) Again, Plaintiff must establish that he suffered from a materially adverse employment action. *Chattman*, 686 F.3d 348. Defendant argues, and Plaintiff does not refute, that Plaintiff "never served the six (6) hour suspension resulting from being found guilty of Neglect of Duty, did not suffer any loss of pay, nor any other damages from the suspension."[10] (ECF No. 32, PageID.1555.)

This leaves only a disciplinary letter in Plaintiff's personnel file. For the same reasons set forth above, this does not constitute a "material" adverse action. Accordingly, an unserved six-hour suspension and discipline letter are not sufficient to establish a materially adverse employment action. Therefore, Plaintiff has not established a prima facie case of discrimination for this claim.

---

[10] Plaintiff argues that, around the same time period, a Caucasian Christian man, Mr. Borowski, was being assisted by Defendant Goodman in backdating FMLA paperwork to keep Borowski from being disciplined or terminated by the EMS unit. (ECF No. 31, PageID.217.) However, this argument is not developed beyond this conclusory allegation. And because Plaintiff has not demonstrated a materially adverse action, the Court need not reach the similarly situated treatment element.

19

Plaintiff focuses on the EEOC "cause" determination regarding the March 2017 disciplinary action.. The EEOC concluded: "The Commission's investigation did establish that [Plaintiff] was discriminated against no March 27, 2017, when he was disciplined due to his national origin and religion in violation of Title VII." (ECF No. 34-3, PageID.2285.) The EEOC does not provide a further explanation or reasoning for its finding.

The Court is not bound by this determination. *See Dorn v. General Motors Corp.*, 131 Fed. App'x 462, 471 (6th Cir. 2005). Moreover, an EEOC finding in Plaintiff's favor does not relieve Plaintiff of his burden of establishing a prima facie case, which he has not done here. *See Williams v. Nashville Network*, 132 F.3d 1123, 1128–29 (6th Cir. 1997). Accordingly, the EEOC finding does not change the outcome here.

The Court considered the possibility that Plaintiff may be relying on the same arguments here that he made against Defendant Goodman, analyzed above. Specifically, Plaintiff alleged that Lt. Darin Ross led the investigation as directed by Defendant Goodman, and that accordingly it was no surprise that Ross found Plaintiff responsible for the delayed run.

20

However, for reasons set forth above, Ross's testimony is clear that the investigation was his own.

### 4. Ramadan 2017 Accommodation

Finally, Plaintiff alleges that Defendant City of Detroit's failure to accommodate his request for a night shift during Ramadan was unlawful under Title VII. As set forth above, Plaintiff sought an accommodation for night shifts from May 28, 2017 through June 20, 2017. (ECF No. 32-14, PageID.1963.)

Yet, despite the allegation that Plaintiff was not accommodated, the records shows that he was, in fact, accommodated. In Plaintiff's deposition, he was asked whether he had made any accommodation requests from Defendant City of Detroit that were granted. He answered:

> 2017, I requested to be switched over to the night shift for the month of Ramadan. That one was granted after I put in for it, maybe three weeks prior to them granting it. The day it was approved was the day Captain Goodman's story was aired on the news.

(ECF No. 32-3, PageID.1596–97.) Additionally, Defendants' motion for summary judgment contains e-mail exhibits indicating that Plaintiff was granted accommodations during Ramadan in 2017. For example, on Wednesday May 17, 2017, Jason Bestard, the Administrative Lieutenant

21

for the City of Detroit Fire Department EMS Division wrote to Plaintiff: "In order to accommodate your request, you will be moved to the NIGHTS 1 shift as a FLOAT PARAMEDIC for the dates, May 28 through June 20th. You will return to your regular shift Sunday, June 25th." (ECF No. 32-14, PageID.1961.) These dates covered the entire period for which Plaintiff sought an accommodation in his initial email to his supervisors.[11] (ECF No. 32-14, PageID.1963.)

There is no material question of fact for a jury to decide on this question. Indeed, all of the evidence presented indicates that Plaintiff was accommodated. Accordingly, he has not set forth a prima facie case on this claim. Plaintiff's motion for summary judgment is denied on this claim, and the City's motion is granted.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiff's motion for summary judgment. This case is dismissed with prejudice.

---

[11] Plaintiff argues that similarly situated white Christian employees were accommodated for their holidays when they were permitted to take breaks. (ECF No. 1, PageID.9.) However, the Court need not reach the similarly situated arguments, because Plaintiff has not established that he was denied accommodation.

22

IT IS SO ORDERED.

Dated: February 4, 2021        s/Judith E. Levy
Ann Arbor, Michigan            JUDITH E. LEVY
                               United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 4, 2021.

                               s/William Barkholz
                               WILLIAM BARKHOLZ
                               Case Manager

23